IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Angelia N. McAbee, ) | Civil Action No. 6:13-2331-RMG-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This case is before the court for a report and recommendation pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.), concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B). [1]

The plaintiff brought this action pursuant to Section 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits under Title XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff initially filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") in June 2007. Those applications were denied on January 29, 2010. She did not appeal that decision. The plaintiff filed a second application for SSI benefits on March 29, 2010, alleging that she became unable to work on January 29, 2010. The application was denied initially and on reconsideration by the Social Security Administration. On April 4, 2011, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and Carey A. Washington, an impartial vocational

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

expert, appeared on December19, 2011, considered the case *de novo* and, on March 23, 2012, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended.  The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied review on July 1, 2013.  The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)    The claimant has not engaged in substantial gainful activity since March 30, 2010, the application date (20 C.F.R § 416.971 *et seq*).
>
> (2)    The claimant has the following severe impairments: cervical spine disorder, fibromyalgia, depression, and PTSD (20 C.F.R. § 416.920(c)).
>
> (3)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).
>
> (4)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c).  To wit, she can lift or carry up to fifty pounds on an occasional basis and up to twenty-five pounds on a frequent basis.  He [sic] can stand, walk, and sit for up to six hours during any given eight hour work period.  He [sic] has no limitations in his [sic] ability to push or pull with the lower and upper extremities.
>
> Claimant is further restricted to occasional climbing of ladders, ropes, and scaffolds.  She is restricted to frequent engagement in all other measured postural activities, including balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs (*Id.* at Page 3).
>
> Claimant is likewise limited to frequent reaching, handling, fingering, and feeling (Page 4).  She is directed to avoid concentrated exposure to hazards such as machinery and unprotected heights.  As a result of her "severe" mental

2

impairments, I find that she is restricted to simple, 1-2 step tasks and up to occasional contact with the public.

(5) The claimant is unable to perform any past relevant work (20 C.F.R. § 416.965).

(6) The claimant was born on September 2, 1969, and was 40 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. § 416.963).

(7) The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964).

(8) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules of a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)).

(10) The claimant has not been under a disability, as defined in the Social Security Act, since March 30, 2010, the date the application was filed (20 C.F.R. § 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

3

has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. § 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* § 416.920(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments that prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial

4

evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## ANALYSIS

SSI may not be awarded for any period of time that precedes the date of the claimant's application. *See* 20 C.F.R. § 416.501 ("Payment of benefits may not be made for any period that precedes the first month following the date on which an application is filed."). An application for SSI remains in effect until the hearing decision is issued. *Id.* § 416.330 ("If there is a hearing decision, [the claimant's] application will remain in effect until the hearing decision is issued."). Therefore, the time period relevant to the plaintiff's claim

5

runs from March 29, 2010,[2] the date she applied for SSI, through March 23, 2012, the date of the ALJ's decision.

The plaintiff was 40 years old on the date the application was filed and was 42 years old on the date of the ALJ's decision.  The plaintiff argues that the ALJ erred by (1)  not assigning controlling weight to Dr. Roth's opinion; (2)  failing to acknowledge the effects of her chronic, disabling pain by incorrectly applying the standard of SSR 96-7; (3) requiring objective medical evidence of the severity of the plaintiff's pain; (4) not following the "slight abnormality" standard by failing to find that her gastroparesis/GERD, chronic headaches, and somatoform disorder are severe impairments; (5)  failing to properly consider the side effects from her medications on her ability to work as required by SSR 96-7p and SSR 96-8p; and (6)  not giving proper consideration to the testimony of the vocational expert that there are no jobs available in the local or national economy that she can perform due to the severity of her impairments.

### Severe Impairments

The plaintiff argues that the ALJ "surprisingly omitted to find [her] well-documented impairments of gastroparesis/GERD, chronic headaches, and somatoform disorder to be severe impairments in violation of SSR 96-3p" (pl. brief at 23).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).  A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." *Id.* § 416.908.  It is the claimant's burden to prove

---

[2]In the decision, the ALJ stated that the plaintiff filed the application for SSI on March 30, 2010 (*see* Tr. 22, 24, 94).  This discrepancy does not have any bearing on the issues discussed herein.

that she suffers from a medically-severe impairment. *Bowen v. Yuckert*, 482 U.S. 137, 145 n. 5 (1987).  If an ALJ commits error at step two, it is rendered harmless if "the ALJ considers all impairments, whether severe or not, at later steps." *Robinson v. Colvin*, No. 4:13-cv-823-DCN, 2014 WL 4954709, at *14 (D.S.C. Sept. 29, 2014) (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008)).

Here, the ALJ found the plaintiff had the following severe impairments: cervical spine disorder, fibromyalgia, depression, and posttraumatic stress disorder ("PTSD") and proceeded to the next step of the sequential evaluation process.  In finding that the plaintiff's headaches were not a severe impairment, the ALJ stated that the plaintiff's "migraine disorder did not appear as a consistent diagnosis in the medical record, and headaches were even denied at times by the [plaintiff]" (Tr. 24).  With regard to her gastrointestinal problems, the ALJ noted that "[t]he record is meager with regard to treatment and diagnosis . . ., and what little [is] available describes treatment of acute problems such as gastroparesis reflux" (*Id.*).  The ALJ went on to consider the plaintiff's headaches and gastroparesis during his assessment of the plaintiff's residual functional capacity ("RFC"), noting that the plaintiff denied headaches during an examination in November 2011 and that records submitted by the plaintiff's internist indicated treatable, acute gastroparesis (Tr. 28, 35).

With regard to her somatoform disorder, the plaintiff points to a diagnosis of "chronic pain associated with both psychological factors and a general medical condition" from Tamara Finney, a licensed independent social worker (pl. brief at 24) (citing (Tr. 389)).  However, as argued by the Commissioner, Ms. Finney was not qualified to establish a medically determinable impairment as she is not an acceptable medical source as defined by the regulations. *See* 20 C.F.R. § 416.913 ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment.")*; see also id.* § 416.913(a), (d) (defining "acceptable medical sources" and noting that evidence from

7

"other medical sources" may be considered to show the severity of an impairment).[3] Furthermore, "diagnosis of [a condition] . . . standing alone, does not support finding that it is a severe impairment." *Wideman v. Colvin*, No. 2:12-cv-1938-TMC, 2014 WL 793053, at * 2 (D.S.C. Feb 24, 2014) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (the mere diagnosis of an impairment, of course, says nothing about the severity of the condition")).

The plaintiff also points to notations from Drs. Roth and Hopkins (pl. brief at 24-25). Dr. Roth questioned whether the plaintiff had a somatoform disorder (Tr. 558), and Dr. Hopkins noted "multiple references in [the medical evidence of record] to psychosomatic/functional factors" (Tr. 413). Again, as argued by the Commissioner, none of these entries indicate the severity of the plaintiff's alleged somatoform disorder. In order to prevail on this argument, the plaintiff must demonstrate that the alleged disorder significantly limited her ability to perform basic work activities, which she has not done. *See* 20 C.F.R. § 416.921(a).

Based upon the foregoing, this allegation of error fails.

### Medical Opinions

The plaintiff next argues that the ALJ erred in not assigning controlling weight to the opinion of Dr. Roth. The regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b), and, unless a treating source's opinion is given controlling weight, weighed according to the following non-exclusive list: (1) the examining relationship; (2) the length of the treatment relationship and the frequency of the examinations; (3) the nature and extent of the treatment relationship; (4) the evidence with which the physician supports his opinion; (5) the consistency of the opinion; and (6)

---

[3] The regulations define "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 416.913(a). "Other medical sources" include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. SSR 06-03p, 2006 WL 2329939, at *2.

whether the physician is a specialist in the area in which he is rendering an opinion. *Id.* § 416.927(c)(1)-(5). *See also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). However, statements that a patient is "disabled," "unable to work," meets the listing requirements, or similar assertions are not medical opinions.  These are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 1996 WL 374183, at *5.

The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. § 416.927(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  Social Security Ruling ("SSR") 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. 1996 WL 374188, at *5.  As stated in SSR 96-2p:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927.  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* at *4.

On October 12, 2011, the plaintiff began a primary care relationship with Katherine Roth, M.D., who reviewed the plaintiff's prior medical records and provided the following summary:

> Ms. McAbee has multiple medical problems as follows: she has idiopathic gastroparesis, chronic pain, fibromyalgia, question of somatoform type of disorder, migraines, history of sensory disturbance, chronic pain and gastroesophageal reflux disease. Fortunately she had dropped me off some records when she was first scheduled for a new patient visit but she had arrived quite late so I had the opportunity to review those records

9

> before today's visit. She has seen multiple neurologists about a series of sensory disturbances and essentially other than fibromyalgia no etiology was identified. There seemed to be some psychological component to her manifestations. She does have proved idiopathic gastroparesis and her chronic pain is managed by Dr. Jaco[bu]s . . . She tells me today that she has episodic flares of her fibromyalgia that starts with a pain in her shoulders, neck, arms and sometimes thighs. When these occur they are associated often with headache and occasionally nausea and vomiting.

(Tr. 551). The plaintiff presented with an acute complaint of nausea and vomiting (*id.*). Dr. Roth assessed: 1) fibromyalgia with acute flare of pain; 2) idiopathic gastroparesis; 3) chronic pain; 4) GERD; and 5) history of multiple sensory disturbances (Tr. 552).

Dr. Roth next saw the plaintiff on November 3, 2011. The plaintiff reported a history of pain flares that were associated with hoarseness in the voice and all over muscle aches and pain with nausea and vomiting (Tr. 549). She reported that she felt well enough to work out that morning at Curves, and she had lost seven pounds since July. The plaintiff thought her weight loss was from vomiting. Dr. Roth assessed nausea with vomiting and fibromyalgia (*id.*).

On December 15, 2011, Dr. Roth completed a questionnaire and Clinical Assessment of Pain form, stating her opinion that the plaintiff was not capable full-time work (Tr. 556-58). Specifically, Dr. Roth indicated: the plaintiff had pain "present to such an extent as to be distracting to adequate performance of daily activities or work"; her pain would lead to "abandonment" of attempts to walk, stand, bend, stoop, and move her extremities; and her medications had significant side effects that would limit her effectiveness in daily activities and in the workplace (Tr. 556). Furthermore, Dr. Roth found that the plaintiff's pain might be less intense in the future, but that it would still remain a significant element in her life (Tr. 557). Additionally, she concluded that the plaintiff was incapable of sedentary work and that the restrictions she assigned were permanent (Tr. 558). Finally, she stated that she based these restrictions on the plaintiff's fibromyalgia,

10

chronic pain syndrome, idiopathic gastroparesis, anxiety disorder with panic, and questionable somatoform disorder (Tr. 558).

The ALJ gave Dr. Roth's opinion "no persuasive weight" (Tr. 35). In doing so, the ALJ noted first that Dr. Roth's opinion was in the form of a "circle the best answer" questionnaire (Tr. 29, 35). *See Jones v. Colvin*, No. 0:12-cv-1773-MGL, 2013 WL 4823174, at *5 (D.S.C. Sept. 9, 2013) (finding "the fact that [an] opinion is presented in a leading format alone does not constitute persuasive contrary evidence to reject [it]" but that "the force of a medical opinion may be *diminished* when it is offered on a check-the-box form.") (emphasis in original).

The ALJ also noted that "Dr. Roth's conclusory [opinions] [were] completely unsupported by citations of any objective medical evidence" (Tr. 35; *see also* Tr. 29). The plaintiff contends that Dr. Roth cited to objective evidence by stating her opinion was based upon "fibromyalgia, chronic pain syndrome, and idiopathic gastroparesis and anxiety disorder with panic. I also question if she has somatoform type disorder" (pl. brief at 12) (citing (Tr. 558)). However, as argued by the Commissioner, none of this is objective evidence, that is, "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques . . . ." 20 C.F.R. § 416.929(c)(2). Dr. Roth's two physical examinations of the plaintiff did not reveal anything close to a complete inability to work due to pain, and Dr. Roth noted both times that the plaintiff was in no acute distress (Tr. 549, 551). *See Charles v. Barnhart*, 375 F.3d 777, 783 (8th Cir.2004) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements.") (citation omitted).

The ALJ further found that Dr. Roth's opinion was inconsistent with the overall record. Dr. Roth found that the plaintiff's pain greatly reduced her ability to walk, stand, and use her extremities (Tr. 556-58). As the ALJ correctly noted (Tr. 35), the record contained

"numerous instances [of] regular gait [Tr. 348, 385, 473, 482, 487, 491, 495, 499, 503, 507, 514, 517, 521, 525, 534], strength [Tr. 332, 326, 330, 339, 343, 352, 359, 364, 376, 382, 438, 447, 457, 466, 472, 473, 478, 482], sensation [Tr. 339, 343, 348,376, 447], and reflex. [Tr. 447, 472, 477, 481, 500, 508, 522, 531, 535]." Additionally, examinations of her extremities returned essentially normal results (Tr. 359, 364, 382, 457, 466, 478, 482). The ALJ also found that "Dr. Roth's records failed to disclose any musculoskeletal examination which would reasonably likely indicate a cause for the limitation set forth in her opinions" (Tr. 35).

The ALJ further noted that the record "showed numerous impairments to be controlled outright by medication" (Tr. 35). The plaintiff argues that the ALJ "made this conclusory statement without even one citation to a specific reference in the record to any impairment being controlled by medication" (pl. brief at 10). The plaintiff further argues that the statement is "completely false," noting that she reported to a pain specialist, Dr. Dwight Jacobus, in August 2011 that medication was not helping her pain and that she had been to urgent care twice since her last visit (*id.* (citing Tr. 524)). However, even assuming the ALJ erred in making this statement, such error was at most harmless as the ALJ gave several valid reasons for discounting Dr. Roth's opinion as discussed above and below. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir.1994) (finding the ALJ's error harmless where the ALJ would have reached the same result notwithstanding).

The ALJ also noted that Dr. Roth's treatment records "failed to disclose any examination to support a diagnosis of fibromyalgia" and that her conclusions regarding the plaintiff's "fibromyalgia . . . appear[ed] to be predicated on subjective complaints" (Tr. 35). The plaintiff contends that Dr. Roth "diagnosed fibromyalgia after reviewing [the plaintiff's] prior medical record" (pl. brief at 11). However, nothing in Dr. Roth's treatment records

indicate findings in her own examination of the plaintiff supporting a diagnosis of fibromyalgia (*see* Tr. 549-52).  Moreover, as argued by the Commissioner with regard to the ALJ's statement that Dr. Roth's statements appeared to based upon the plaintiff's subjective complaints, the plaintiff stated that she had "episodic flares of her fibromyalgia" (Tr. 551), and Dr. Roth borrowed that phrase verbatim in her opinion (Tr. 557) ("she suffers from severe fibromyalgia [and] has flares of this that are very debilitating").  The Commissioner further states that she is unable to locate the term "flares" anywhere else in the record (def. brief at 12). *See Johnson*, 434 F.3d at 658 (noting that there was no evidence that the doctor performed any physical tests of the claimant's hands, and thus the assessment of the claimant's hand impairment rested solely on the claimant's subjective statements of pain).  Based upon the foregoing, the undersigned does not find error in the ALJ's consideration of this as one factor in his assessment of Dr. Roth's opinion.

The ALJ also found that the functional limitations in Dr. Roth's opinion were partially based on the purported side effects of the plaintiff's medications while "treatment records from other sources failed to reveal complaints by the [plaintiff] of adverse affects from medications [and] [o]ther medical records specifically note no side effects from medications . . ." (Tr. 35).  The plaintiff claims that the functional limitations found by Dr. Roth were not, in fact, predicated on the side effects of medications (pl. brief at 12), but acknowledged that Dr. Roth indicated that the plaintiff's medications would "limit [the] effectiveness of work duties" (Tr. 556).  The record supports the ALJ's finding.  The ALJ acknowledged that the plaintiff reported being "loopy" from Cymbalta, Lyrica, and Ultram (Tr. 35; *see* Tr. 476).  However, the ALJ further noted that the plaintiff's providers adjusted her medications by cutting her Lyrica dose in half (Tr. 471, 478, 482), and, following that adjustment, the plaintiff repeatedly stated that her medications caused no side effects (Tr. 35; *see* Tr. 488, 492, 496, 502, 506, 513, 518, 524, 529, 533).

13

The ALJ further noted that "Dr. Roth made these statements after having a professional relationship of a mere two months with [the plaintiff]" (Tr. 35). Notably, the opinion form asked whether the restrictions Dr. Roth assessed "persisted since at least 1/29/2010" (Tr. 558). Dr. Roth stated that she "believe[d] so, but [had] only take[n] [the plaintiff] on as a patient in [October] 2011" (Tr. 558). The length of the treatment relationship was an appropriate factor for consideration by the ALJ in weighing the opinion. 20 C.F.R. § 416.927(c)(2)(I) (noting that an opinion is generally due more weight the more times the medical source has seen and treated the claimant).

The ALJ also found that Dr. Roth's opinion was inconsistent with the plaintiff's daily activities. In particular, the ALJ felt that the plaintiff's daily activities undercut Dr. Roth's conclusion that the plaintiff was unable to perform sedentary work (e.g., work that required walking and standing for two hours in an eight-hour day and sitting for six hours in an eight hour workday) (Tr. 35; *see* Tr. 558). For example (*see* Tr. 28, 29, 31, 33, 35) (ALJ's discussion of the plaintiff's daily activities), the plaintiff was able to: take her son to school (Tr. 65); occasionally go shopping (Tr. 67); work out at Curves (Tr. 453, 549); drive (Tr. 65); go to church once per month (Tr. 65); and go to a beautician once every other month (Tr. 242). Contrary to the plaintiff's argument (pl. brief at 13), this was an acceptable reason to discount Dr. Roth's opinion. *See Glick v. Colvin*, No. 6:12-cv-03294-RBH, 2014 WL 994591, at *13-14 (D.S.C. March 13, 2014) (upholding an ALJ's decision to discount a medical opinion where, among other things, the ALJ noted that the limitations in the opinion conflicted with the claimant's daily activities).

Lastly, the plaintiff argues that the ALJ erred in giving significant weight to the opinion of Dr. Hopkins, a nonexamining State agency medical consultant who reviewed the plaintiff's medical records and, on September 8, 2010, found that the plaintiff was capable of a restricted range of medium work (Tr. 409-15), when the ALJ found that the fact that Dr. Roth only saw the plaintiff for two months detracted from the reliability of her opinion (pl.

14

brief at 12).  The ALJ gave Dr. Hopkins' opinion significant weight, finding that he set forth a rationale in support of his RFC finding that was supported by the evidence of record, including the evidence discussed above (Tr. 34).  The plaintiff contends that the ALJ could not rely on this opinion because there was evidence that postdated Dr. Hopkins' opinion (pl. brief at 12, 27-28).  However, she does not point to evidence Dr. Hopkins did not consider that would have changed his opinion.  As argued by the Commissioner, the only evidence postdating Dr. Hopkins' opinion that contained functional restrictions greater than the ones he assessed was Dr. Roth's conclusory and unsupported opinion.  Moreover, an ALJ may rely on a medical source opinion that did not have access to the entire medical record, so long as the ALJ considered the entire evidentiary record and substantial evidence supports the ALJ's decision. *Thacker v. Astrue*, No. 11-246, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011), *adopted by* 2012 WL 380052 (W.D.N.C. Feb. 6, 2012).  Here, the ALJ considered the entire record, and substantial evidence supports his determination to give significant weight to Dr. Hopkins' opinion that the plaintiff was capable of a restricted range of medium work as it is consistent with the record (Tr. 34). *See* 20 C.F.R. § 416.927(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation.  Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants . . . as opinion evidence, except for the ultimate determination about whether you are disabled."). *See also* SSR 96-6p, 1996 WL 374180, at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."); *Campbell v. Bowen*, 800 F.2d 1247, 1250 (4th Cir.1986) (Fourth Circuit cases "clearly contemplate the possibility that [treating physician] opinions may be rejected in particular cases in deference to conflicting opinions of non-treating physicians."); *Gordon v.*

15

*Schweiker*, 725 F.2d 231, 235 (4th Cir.1984) ("[T]he testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record. . . . [W]e have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record.") (citations omitted).

Based upon the foregoing, the ALJ's consideration of Dr. Roth's opinion was without legal error, and his decision to give the opinion "no persuasive weight" is based upon substantial evidence. Accordingly, this allegation of error is without merit.

### Credibility

The plaintiff next argues that the ALJ failed to properly assess her credibility (pl. brief at 14-22). The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565. However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or

16

muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p, 1990 WL 300812).

> The court further acknowledged:
>
>> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id*. at 565 n.3 (quoting *Craig*, 76 F.3d at 595). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 416.929(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White*

17

*v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).  Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4.  Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)    the individual's daily activities;

(2)    the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)    factors that precipitate and aggravate the symptoms;

(4)    the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

(5)    treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

(6)    any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

(7)    any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.  *See* 20 C.F.R. § 416.929(c).

At the administrative hearing, the plaintiff testified that she became physically unable to work in February 2007, when she was hospitalized for a spider bite (Tr. 49-51). She had an allergic reaction to the medication that was provided.  She explained:

It collapsed my veins, messed up inside of my lips, my eyelids, vaginal area, other areas of my body, additional swelling. After the IV was removed, I had several months of trying to recover from the physical damages that it did and after I went to see a neurologist after I could not get the strength back in my arms,

18

> I was told that I had nerve damage in both elbows in the ulnar nerves. Since then, I've been told it developed into fibromyalgia because of the trauma from that hospital stay.

(Tr. 50). The plaintiff's condition progressed to the point she was having chronic pain episodes, with all over body pain accompanied by headaches and nausea/vomiting. (Tr. 50-51). The plaintiff testified, utilizing a pain scale of zero to ten, that when she has a pain episode, even on medication, her body pain ranges from six to ten+ (Tr. 51). She explained that she has one to three episodes per week when her pain flares up, which leads to her vomiting (Tr. 52). These episodic flares of pain can last four days to eleven days (*Id.*). The plaintiff testified that her pain episodes trigger headaches, which can last three days to more than a week (Tr. 56). When the plaintiff has a headache, she will take her medication, wear a cold mask, and lay down in her dark, quiet bedroom. She also complains of losing her voice when she has an episodic flare of pain (Tr. 57).

The plaintiff stated that she continues to have constant pain in both arms, a constant tremor in her right hand, and also extreme weakness and loss of sensation of touch in her hands. She wears compression gloves to help with the pain in her hands and fingers (Tr. 53). The plaintiff wears wrist splints most all the time. (Tr. 54). She also wears elbow sleeves to help with pain and to protect against bumping her elbows; she is not able to put her elbows against anything (*id.*). She stated that she can only write or keyboard for a few minutes before she loses feeling in her hands (Tr. 55). The plaintiff often wears a ball cap because she cannot grip a hairbrush to fix her hair (*id.*). She testified that she could sit no more than thirty minutes comfortably and stand only about ten minutes. (Tr. 60). The plaintiff thought she could lift about two to three pounds and explained she could not lift a full gallon of milk (Tr. 61).

The ALJ found that while the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning

19

the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent wit the RFC assessment (Tr. 31-33).

The plaintiff argues that the ALJ failed to properly analyze her credibility and did not provide sufficient reasons for discrediting her testimony regarding the limiting effects of her pain and other symptoms (pl. brief at 17).   The undersigned disagrees.

The ALJ  noted inconsistencies between the plaintiff's testimony and the record.  For example, the plaintiff testified that her lowest pain on a one to ten scale was a six (Tr. 32; *see* Tr. 51).  However, in August 2010, she stated to Pain Management Associates that medication dropped her pain to two out of ten (Tr. 32; *see* Tr. 384, 413). SSR 96-7P, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record").   The plaintiff points to numerous other points in the record where she reported that her pain was far higher than a six out of ten, including several where her she rated her pain as ten out of ten, and argues that the ALJ failed to acknowledge these higher pain ratings (pl. brief at 17-18).  The ALJ specifically cited record evidence showing normal examination findings that contrasted with the plaintiff's complaints of disabling pain:

> Studies of [the plaintiff's] cervical spine revealed no evidence of radiculopathy or tenderness. [Tr. 322, 330, 339, 343, 352, 359, 364, 366, 447]. Other Pain Management Associates notes included observations that claimant exhibited full, painless range of motion, normal stability, normal strength, and normal tone. [Tr. 382, 457, 466, 472, 478] In contrast, [the plaintiff] testified that her pain level was 6/10 with 10 being the worst possible pain. [Tr. 51]. In addition, she reported she had a pain level of 10+/10 four times per month. [Tr. 51]. Her testimony is inconsistent with the physical examinations and diagnostic tests set forth above in this paragraph [citing Tr. 472-73, normal physical examination in February 2011] . Generally, one would expect physical findings and reports of pain in the medical records consistent with the severity testified to by [the plaintiff][;] however, medical records reported no tenderness, full painless range of motion [Tr. 348], no joint tenderness to palpation [Tr. 359, 364, 382, 457, 466, 472, 473, 478, 482] which is in stark contrast to the severity testified to by [the plaintiff].

(Tr. 32-33).

The plaintiff argues that all this was "objective medical evidence" and that an ALJ cannot rely on objective evidence when discounting subjective allegations of pain (pl. brief at 18, 20-22).  It is true that an ALJ may not rely *solely* on objective evidence in discounting a claimant's subjective allegations; however, an ALJ may consider the lack of objective evidence or other corroborating evidence as factors in the credibility assessment. *See Hines*, 453 F.3d at 565 n.3 (quoting *Craig*, 76 F.3d at 595).  Here, the ALJ relied on several factors in his credibility analysis.

Next, the ALJ noted that the plaintiff's presentation and testimony at the hearing were inconsistent with the record with regard to her carpal tunnel syndrome (Tr. 32-33).  The ALJ discussed how the plaintiff "appeared to exaggerate the effects of her pain, making groaning noises at hearing and doubling over as if the pain was too great for her to speak" (Tr. 32).  He also noted that the plaintiff wore splints and compression aides on both wrists and arms (Tr. 33).  The Fourth Circuit has held that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984) (citing *Tyler v. Weinberger*, 409 F.Supp. 776 (E.D.Va.1976)). *See Wooten v. Astrue*, No. 1:11-cv-705-RMG-SVH, 2012 WL 3150536, at *9-10 (D.S.C. July 11, 2012) (holding that an ALJ can consider hearing observations as one part of the credibility analysis), *adopted by* 2012 WL 3150530 (D.S.C. Aug. 1, 2012).

The plaintiff testified to having carpal tunnel syndrome.  The ALJ noted that her presentation and testimony were inconsistent with the record (Tr. 33), which showed that EMG/NVC testing "determined that the [plaintiff] does not suffer from carpal tunnel syndrome" (Tr. 313); she had no complaints of carpal tunnel syndrome when setting forth her medical history (Tr. 551); sensation in the extremities was normal, and her hands and elbows were reported to be without tenderness and normal range of motion (Tr. 348); early

21

notes from ReGenesis indicated that the plaintiff exhibited normal range of motion in the elbows, wrists, and shoulders (Tr. 354); there was no radiation of pain (*id.*); no tissue swelling (*id.*); and no remarkable abnormalities of the plaintiff's musculoskeletal profile (*id.*). The ALJ further noted that an examining source, Dr. Gonzalo Pares, found that the severity of this impairment did not warrant surgical intervention in order to keep the plaintiff's hands and wrists functional (Tr. 33; *see* Tr. 313). Further, the ALJ noted that during the plaintiff's treatment at Pain Management Associates, carpal tunnel syndrome never appeared as a primary cause for medical concern (Tr. 33). The ALJ also cited to Dr. Hopkins' notation that the plaintiff's "handwriting in [her function report was] completely inconsistent [with] allegations of hand dysfunction" (Tr. 31; *see* Tr. 248, 413).

The plaintiff contends that it was fibromyalgia that caused her extremity pain and that the ALJ improperly "discounted [her] credibility because [she] confused the cause of her symptoms to be carpal tunnel syndrome when these symptoms were mostly likely related to her fibromyalgia" (pl. brief at 19). She further argues that she "should not have been penalized for her lack of medical expertise regarding cause" (*id.*). However, as argued by the Commissioner, the plaintiff asserted carpal tunnel syndrome as an issue at her hearing (Tr. 54), while Dr. Pares stated on June 16, 2010, that the results of testing in his office determined that she did not suffer from carpal tunnel syndrome (Tr. 313). Moreover, regardless of the cause of the plaintiff's extremity pain, numerous examinations of her upper extremities returned normal results (*see* Tr. 359, 364, 382, 457, 466, 478, 482). The court finds no error in this regard.

The ALJ also found the plaintiff's "[a]ctivities of daily living illustrate functional abilities inconsistent with her testimony regarding carpal tunnel syndrome. Cooking [Tr. 243], doing dishes [Tr. 243], laundry [Tr. 64], cleaning [Tr. 243], driving [Tr. 65], and reading [Tr. 388] illustrate functional ability inconsistent with her presentation and testimony regarding carpal tunnel syndrome" (Tr. 33). The plaintiff argues that it is her fibromyalgia,

22

and not carpal tunnel syndrome, that is her most disabling impairment, and the ALJ erred in considering these simple activities that she can do in her own manner and at her own pace as evidence that she can perform work (pl. brief at 20). Here, even if the ALJ overstated the plaintiff's daily activities, such error was harmless as the ALJ's credibility analysis is supported by other substantial evidence, and thus any such error was harmless.

Based upon the foregoing, this allegation of error is without merit.

### Vocational Expert

Lastly, the plaintiff argues that the ALJ erred in not giving proper consideration to the testimony of the vocational expert that there are no jobs available in the local or national economy that she can perform due to the severity of her impairments (pl. brief at 27-29). At the hearing, the ALJ asked the vocational expert to assume a person of the plaintiff's age, education, and past work experience and the RFC described above. The vocational expert testified that such an individual could perform the jobs of linen room attendant (medium, unskilled), kitchen helper (medium, unskilled), and sandwich maker (medium, unskilled) (Tr. 69-71). Based upon this testimony, the ALJ found that there were jobs that exist in significant numbers in the national economy that the plaintiff could perform (Tr. 36). After the ALJ questioned the vocational expert, the plaintiff's attorney asked the vocational expert to assume that the hypothetical individual would have excessive absences due to the effects of pain (as described by Dr. Roth). The vocational expert responded that the individual would not be able to perform the identified jobs (Tr. 71). As discussed above, the undersigned finds that the ALJ appropriately gave no persuasive weight to Dr. Roth's opinion, and the RFC analysis upon which the ALJ's hypothetical was based was supported by substantial evidence. Accordingly, this allegation of error is without merit.

## **CONCLUSION AND RECOMMENDATION**

The Commissioner's decision is based upon substantial evidence and is free of legal error.  Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

November 20,2014
Greenville, South Carolina